[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11473

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 8, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00946-CV-5-VEH

ALIREZA A. NASSERI,

                                        Plaintiff-Appellant,

versus

CITY OF ATHENS, ALABAMA,
FRED MILLWARD,
WESLEY LITTLE,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 8, 2010)

Before HULL, WILSON and FARRIS,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Alireza Nasseri appeals the district court's order granting qualified immunity at summary judgment for Defendants Fred Millward and Wesley Little in an action brought pursuant to 42 U.S.C. § 1983 alleging violations of the Fourteenth Amendment, including excessive force and deliberate indifference to serious medical needs.[1] We reverse in part on the excessive force claim and reverse on the deliberate indifference claim.

We review the district court's grant of summary judgment de novo. *Mann v. Taser Intern, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009). We consider "all the facts and reasonable inferences in the light most favorable to the non-moving party." *Mann*, 588 F.3d at 1303.

## I. Excessive Force Claims

Nasseri first claims that Officer Little's use of pepper spray was excessive force. We review Nasseri's claim under the Fourteenth Amendment.[2] An

---

[1] Nasseri does not challenge the district court's grant of summary judgment for the City of Athens.

[2] We have indicated previously "the precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit." *Hicks v. Moore*, 422 F.3d 1246, 1253 n.7 (11th Cir. 2005). However, Nasseri filed his claim solely under the Fourteenth Amendment, specifically identified himself as a pre-trial detainee, and indicated that

2

excessive force claim under the Fourteenth Amendment requires application of the same standard as under the Eighth Amendment. *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008). The test is whether the use of force "shocks the conscience and it necessarily will if the force was applied . . . maliciously and sadistically for the very purpose of causing harm." *Id.* at 1307 (citations and quotations omitted). We consider five factors under the "shocks the conscience" test, as set forth in *Whitley v. Albers*, 475 U.S. 312 (1986):

> (1) the need for force; (2) the relationship between that need and the amount of force used; and (3) the extent of the resulting injury. In addition to those three factors we consider as fourth and fifth factors "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them, and any efforts made to temper the severity of a forceful response."

*Danley*, 540 F.3d at 1307 (citing and quoting *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085).

We have indicated previously that under the third factor, the initial use of pepper spray is not necessarily a constitutional violation. *See id.* at 1308. The initial use of pepper spray does not cause any substantial or long-lasting injury and

---

the constitutional violation was for cruel and unusual punishment. Nasseri first attempted to assert a Fourth Amendment excessive force claim in his opposition to summary judgment. However, this assertion was too late, and we consider the claim only under the Fourteenth Amendment. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

may be "'a very reasonable alternative to escalating a physical struggle.'" *Id.* (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002)). The extent of injury is only one factor in a Fourteenth Amendment excessive force claim and is not dispositive. *See Wilkins v. Gaddy*, __ U.S. __, 130 S. Ct. 1175, __ (2010).[3]

Taken in the light most-favorable to Nasseri, the facts in this case are that Nasseri was handcuffed, with his hands behind his back, and seated in a chair in the booking room at the jail. Three officers and approximately 11-12 inmates were present at the jail. Defendant Millward went to discuss charges with Shelnutt, an arrestee in a room adjacent to the booking room where Nasseri was sitting in handcuffs. Shelnutt attacked Millward. Non-defendant officer Wesley Jarrett, who was at the time in the booking room with Plaintiff Nasseri, moved to assist Millward in the other room. As Jarrett went to assist Millward, arrestee Solomon, who also was in the booking room with Plaintiff Nasseri, attacked Officer Jarrett from behind. Little was in the adjacent dispatch room during these two altercations, and he heard the fight in the booking room between Officer Jarrett and arrestee Solomon. Little came to the booking room, found Jarrett and Solomon struggling with each other on the floor, and sprayed Solomon with a burst of

---

[3]"An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 130 S. Ct. at __.

pepper spray. Nasseri, then only a few feet away from Jarrett and Solomon, told Little to "stop that mess." According to Nasseri, Little took a few steps toward Nasseri and sprayed him in the face from a close distance with pepper spray, telling Nasseri to "shut up."[4]

If there were nothing before us but this initial use of pepper spray, we would conclude that Nasseri has failed to show that Little acted maliciously and sadistically to cause Nasseri harm, and thus there would be no Fourteenth Amendment excessive force violation. *See Danley*, 540 F.3d at 1307. Little was permitted to use some force in controlling the situation and preventing it from escalating. While in hindsight it may not appear that use of pepper spray against Nasseri was required, Little's one-time use of pepper spray in this context does not shock the conscience. The district court correctly granted qualified immunity to Little.

What happened next, however, when added to the initial pepper spray, states a Fourteenth Amendment claim for excessive force against Millward. After Defendant Little sprayed Nasseri and Solomon, ambient pepper spray contaminated the rest of the jail. Defendant Millward and Officer Jarrett evacuated all detainees and prisoners, including Nasseri, from the jail in order to wait for the

---

[4]Little denies being aware of Nasseri and denies spraying Nasseri with pepper spray.

air to clear. Defendant Millward placed Nasseri in the back of a patrol car while all of the other approximately 11-12 inmates were placed outside standing against the wall of the jail. Once outside, the officers permitted the other detainees to decontaminate themselves from the pepper spray, including allowing them fresh air and access to running water (a hose outside) to use on their faces. The record does not reflect that the other detainees, who, except for Solomon and Shelnutt, were unsecured, caused any commotion outside the jail or threatened the officers.

After Millward placed the choking and gasping Nasseri in the patrol car, Nasseri tried to stick his head through an eight to ten inch opening in a rear window of the car and yelled for medical help. Millward heard Nasseri yelling and returned to the car twice; at one point, Millward closed the window that separates the front and rear portions of the patrol car. Nasseri called for help throughout the time that he was in the vehicle, stating that he could not breathe. Although Millward claims he did not know Nasseri had been subjected to pepper spray, Nasseri states Millward did know. Nasseri remained in the car for around an hour and was never permitted to decontaminate. When Nasseri was later removed from the car, he repeatedly complained to Millward of breathing problems and requested medical care during the booking process, but Millward did not provide it. Nasseri claims he has since developed Reactive Airway Dysfunction Syndrome

6

(RADS), more likely than not from his prolonged exposure to pepper spray.

In *Danley*, this Court construed a similar factual claim as alleging both an excessive force claim and a deliberate indifference claim, applying different standards for each. *Danley*, 540 F.3d at 1306-07. The *Danley* Court reasoned that although a jailer's initial use of pepper spray on a pretrial detainee would not have been excessive force standing alone, the use of pepper spray coupled with a 20-minute confinement in a small poorly-ventilated cell without decontamination violated the fifth *Whitley* factor of whether jailers "temper[ed] the severity of [their] forceful response." *Id.* at 1308. The Court held that confinement without decontamination constituted a "single course of conduct" inseparable from the initial use of pepper spray, which was excessive force under the *Whitley* test. *Id.* at 1307-09.

Under Nasseri's version of events, Officer Millward's continued confinement of him in an unventilated patrol car without decontamination constituted excessive force. Under this version, after being sprayed, Nasseri was cooperating, was not posing a threat to himself, the officers, or other detainees, and repeatedly cried out for medical help. Although Little's initial use of pepper spray does not "shock the conscience," there was no need to then confine Nasseri in a poorly-ventilated car for an hour without decontamination. It is excessive force for

7

a jailer to continue using force against a prisoner who already has been subdued. *Danley*, 540 F.3d at 1309. That is what Nasseri describes in this case. The district court accordingly erred in granting qualified immunity to Millward on Nasseri's excessive force claim. Nasseri stated a constitutional violation, and, as the Court reiterated in *Danley*, Nasseri is not required also to show violation of a clearly established right for his Fourteenth Amendment excessive force claim.[5]

## II. Deliberate Indifference Claim

Nasseri also claims that Millward ignored his request for medical attention after being sprayed by Little and that this was deliberate indifference to a serious medical need. Deliberate indifference to a prisoner's medical needs violates the Eighth Amendment. Pretrial detainees are afforded the same protections as prisoners, except that a pretrial detainee brings a deliberate indifference claim via the Fourteenth Amendment. *Id.* at 1310. To prove deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Id.* (citing *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

---

[5]The Court stated that "there is no room for qualified immunity" in a Fourteenth Amendment excessive force case because the conduct required is so extreme that no reasonable person could believe it was lawful. *Danley*, 540 F.3d at 1310.

*A.*     *Serious Medical Need*

There are two ways to prove serious medical need.  *Id.*  One is if delay in treating the condition worsens it, and the other is if the need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* at 1310-11 (quotations omitted).  Both tests apply in this case.  Under the first test, Nasseri claims he would not have suffered the long-term injury he alleges if he had been allowed to decontaminate immediately.  *See id.* at 1310.   Under the second test, Nasseri had watering eyes, was coughing, had difficulty breathing, and was spitting blood.  All of this would have been so obvious that even a lay person such as Officer Millward would easily have recognized the necessity for a doctor's attention.  *See id.* at 1310-11.

*B.*     *Deliberate Indifference to Need*

To meet the second element, Nasseri must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."[6]  *Id.* at 1312 (quotation omitted, alteration in original).

_____

[6]It is argued that there is an intra-circuit split concerning whether the third prong of this standard should be "more than mere negligence" or "more than [gross] negligence."  *Compare, e.g.*, *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004), *and Mann v. Taser Int'l*, 588 F.3d 1291, 1307 (11th Cir. 2009), *with Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam), *and Goebert v. Lee County*, 510 F.3d 1312, 1326–27 (11th Cir. 2007).  However, this is not at issue in this case, as Nasseri meets the "more than gross negligence" standard.

Looking to the first prong of this subjective test, and reading the evidence in the light most favorable to Nasseri, Millward knew there was a risk of serious harm to Nasseri. Nasseri had been choking and gagging and spitting blood. Pepper spray was visible on Nasseri's face. Millward also allowed all the other prisoners to decontaminate, including Solomon and Shelnutt. Millward must have known that Nasseri was exposed to pepper spray and should have allowed Nasseri to decontaminate.

Nasseri meets the second prong as well. While Nasseri was in the car, Millward disregarded the risk when he did not allow Nasseri to decontaminate himself. He also disregarded the risk by not allowing Nasseri to seek medical attention.

Turning to the third prong, "'[w]hen prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference.'" *Id.* (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005)). Here, Millward's explanation was that he did not decontaminate Nasseri because he did not believe Nasseri was sprayed directly and did not know Nasseri was yelling in the car because of his exposure to pepper spray. Under Nasseri's version of events, Millward knew that Nasseri and the other detainees had been exposed to pepper spray. Millward

10

permitted all other detainees, including the violent Solomon and Shelnutt, to decontaminate, yet he ignored without plausible explanation Nasseri's known exposure to pepper spray. The district court indicated that because Millward faced a chaotic and unusual situation outside the jail he had a legitimate reason for ignoring Nasseri. However, the record does not support this characterization, and a trier of fact could properly find no chaotic and unusual situation existed outside the jail. Taken in the light most favorable to Nasseri, a fact finder could infer that Millward ignored Nasseri's medical condition without explanation.

## C. Causation

The third element of the deliberate indifference test is also met. In the light most favorable to Nasseri, the facts show that Millward's failure to decontaminate Nasseri and provide Nasseri with medical treatment led to Nasseri's claimed development of RADS

## D. Qualified Immunity

Millward nonetheless argues that he is entitled to qualified immunity on Nasseri's deliberate indifference claim. He attempts to distinguish *Danley* by arguing that Millward did not mock Nasseri, was focused on the other prisoners, and the situation was chaotic. *Danley* states that "when jailers are aware of serious medical needs they may not ignore them or provide grossly inadequate care."

11

*Danley*, 540 F.3d at 1313.  The *Danley* Court concluded that qualified immunity did not apply in that situation.  As Nasseri has established that Millward was aware of his serious medical need and ignored it, Nasseri has stated a violation of his Fourteenth Amendment rights.

Nasseri also has shown that Millward violated a right that was clearly established.[7]  The Court stated in *Danley* that after a detainee was quieted by pepper spray and was no longer a disruption or threat, a jailer's refusal to permit decontamination for 20 minutes after use of pepper spray violated a clearly established right because existent "general legal principles" were enough to clearly establish the right.  *Danley*, 540 F.3d at 1313.

The district court accordingly erred in granting qualified immunity to Millward on Nasseri's excessive force and deliberate indifference claims.  The district court correctly granted qualified immunity to Little.

AFFIRMED in part, REVERSED and REMANDED in part for further proceedings.

---

[7]Unlike Fourteenth Amendment excessive force claims, a defendant in a Fourteenth Amendment deliberate indifference claim may assert qualified immunity if the right alleged to be violated was not clearly established.  *See id.* at 1313 (analyzing Fourteenth Amendment deliberate indifference claim, requiring plaintiff to show the violation of a clearly established right, and concluding the "general legal principles announced by our decisions in this area of law are enough to make the right violated clearly established").

12